EDWARD DONNELLY, Respondent, *v.* THE BROOKLYN CITY RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries alleged to have been caused by defendant's negligence, plaintiff's evidence was to the effect that he and one McN., had been to the city of B. with a wagon load of fish for market and were returning home upon an avenue, in the center of which were two tracks of defendant's railroad. On each side of the tracks was an ordinary dirt road of sufficient width for the passage of vehicles. They had been traveling on the right-hand track, but hearing a loaded wagon approaching plaintiff said to McN., who was driving, that he had better turn out. Instead of turning to the right upon the dirt road, McN., without objection on plaintiff's part, turned to the left upon the other track used by trains going toward the city. They had proceeded thereon one hundred or one hundred and fifty feet when they heard and saw an engine approaching from fifty to seventy-five feet distant, moving at the rate of about five miles an hour. After passing the wagon they endeavored to get back upon the former track, but the wheels were jammed; the horse and engine collided and plaintiff was thrown from the wagon and injured. Both plaintiff and McN. were well acquainted with the avenue, and the former testified that he was expecting to meet a train about that place. McN. had driven over

the avenue several times a month for fifteen years. McN's excuse for not turning out on the side of the road was that it was a sandy road and the boughs of trees along it would interfere with his load; this consisted simply of empty fish boxes. *Held*, that plaintiff's evidence showed contributory negligence on the part of plaintiff, and of his companion with which he was chargeable, and a refusal to nonsuit was error; also, that the dimness of the head-light on the engine and the failure to ring a bell or blow a whistle did not constitute negligence on the part of defendant, there being no crossing at that part of the avenue.

*Robinson* v. *N. Y. C. & H. R. R. R. Co.* (66 N. Y. 11); *Dyer* v. *E. R. Co.* (71 id. 228); *Masterson* v. *N. Y. C. & H. R. R. R. Co.* (84 id. 247), distinguished.

Argued February 29, 1888; decided March 13, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the Second judicial department, entered upon an order made February 15, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are sufficiently stated in the opinion.

*Samuel D. Morris* for appellant. The plaintiff was guilty of contributory negligence, which was the cause of the collision. (*Adolph* v. *Central Park, etc.*, 76 N. Y. 534.) A person about to go upon a railroad track must look and listen, and is excusable for the omission only when the circumstances show that both precautions were impossible or unavailing. (*Tolman* v. *Syracuse, etc.*, 98 N. Y. 202, 203.) The fact that McNally, and not the plaintiff, was driving at the time, affords the plaintiff no escape from the charge of contributory negligence, they being engaged in a common enterprise or employment. (*Beck* v. *E. R. F. Co.*, 6 Robt. 87 ; *Smith* v. *N. Y. C., etc.*, 38 Hun, 33, 35, 37 ; *McCall* v. *N. Y. C. etc.*, 54 N. Y. 642 ; *Bronk* v. *N. Y. & N. H. R. R. Co.*, 5 Daly, 454 ; *Allyn* v. *B. & A. R. R. Co.*, 105 Mass. 77.) The testimony of the engineers called by plaintiff, as to how far they could see objects on the various roads on which they were running, with different head-lights, engines and surroundings, was incompetent.

(*People* v. *Yates*, 32 N.Y. 511; *Weaver* v. *Keokuk R. R. Co.*, 45 Iowa, 247.) Negligence cannot be predicated upon the fact that the engineer did not blow a whistle or ring a bell after turning the curve. (*Harty* v. *N. Y. C. R. R. Co.*, 42 N. Y. 468; *Pakalinsky* v. *N. Y. C. etc.*, 82 id. 424; *People* v. *N. Y. C. etc.*, 25 Barb. 199.)

*Charles J. Patterson* for respondent. To operate the train upon the highway at midnight, without a proper head-light, and without sounding a signal, was conduct which the jury might say was negligence in the defendant. (*Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Cordell* v. *N. Y. C. R. R. Co.*, 64 id. 535.) The evidence that the parties listened for the train and heard nothing shows presumptively that no signal was given. (*Dyer* v. *Erie R. Co.*, 71 N. Y. 237.) The questions calling for the condition of the trees on Third avenue in April, 1885, a year after the accident, were properly excluded. (*Ferguson* v. *Aubbell*, 97 N. Y. 507.) The objections taken being general in form, and specifying no ground, are not available. (*Torley* v. *Bacon*, 70 N. Y. 37; *Shaw* v. *Smith*, 3 Keyes, 316; *Ward* v. *Kilpatrick*, 85 N. Y. 417.)

GRAY, J. The facts proved on the trial of this action did not warrant the submission of the case to the jury. It was shown on the plaintiff's part that he was chargeable with neglect to act in such manner as to avoid the danger. The plaintiff, with one McNally, had driven in from Fort Hamilton, where they were employed, to the city of Brooklyn, in the evening, in a wagon drawn by one horse with a load of fish for market. They set out to return about midnight and took the route of an avenue on which were two tracks of the defendant, upon which were run, either way, trains of cars drawn by dummy engines. These tracks were laid in the middle of the avenue, and on either side was an ordinary dirt road of sufficient width for the passage of vehicles. McNally was driving and plaintiff was sitting by his side. They had been on the right-hand railroad track, when hearing

a wagon approaching, which they judged to be loaded, they turned to the left-hand and drove upon the other track used by trains going towards Brooklyn. They had not been long there when they heard and saw coming towards them in the distance a dummy engine. We give the plaintiff's description of how they knew of the approach of the engine.

On his direct-examination he was asked, after stating how they came to take the other track and then endeavored to get back on their former track : "Q. How far did he" (referring to McNally) "go that way trying to pull himself out — to the right ? A. He must have gone somewhere, I think, about fifty feet nearly ; didn't notice anything then ; I noticed the railroad car when it came pretty near. Q. What did you notice ? A. The light of the dummy, the torch-light upon the boiler, whatever you call it. Q. Was your attention attracted to the dummy by hearing it or seeing it ? A. I heard the noise, then watched and saw the light behind the boiler ; I first heard the noise. Q. Where did you hear the noise about ? A. Coming over a gutter, the iron grating in the road, an iron bridge that covers an opening in the road ; that iron bridge is seventy-five feet from where I was when I first heard it ; when I heard that noise I did nothing ; I looked and saw a light behind the boiler"

Plaintiff further testified that he did not see the head-light until it was about fifty feet off, and that it was dim. He said : "When the train was going over that seventy-five feet I did nothing except to sit on the wagon and shout twice to the engineer to hold up." Plaintiff thought that the train was going about five miles an hour, though how upon so dark a night, and, as he describes the events, he could form any possible or reliable opinion as to the speed of the train, it is difficult to comprehend. The horse and engine collided ; the horse was killed and plaintiff was thrown out and received his injuries. The force of the collision was such as to cause the shaft of the wagon to penetrate the engine's water tank. Plaintiff further, upon his counsel's examination, testified, after saying that no whistle was blown nor bell rung on the

train : " Q. When did you listen for it ?   A. The whole way
to the city line ; I was listening because I was expecting to
meet it somewhere about there, that part." He also says
when he heard the other wagon coming he told McNally he
" had better turn out," but he does not appear to have made
any objection to his turning upon the track on which he tells
us " he was expecting to meet " trains. He " was acquainted
with that avenue, had been in the habit of going along Third
avenue a good many years." He " used to drive a car and
knew which track the cars run on in coming to Brooklyn and
was expecting a train along there."

Plaintiff's narrative of what happened, and from which we
have extracted the foregoing facts, was corroborated by
McNally. From his evidence it appears that he turned out
for the wagon, because from the sound he judged it to be
loaded ; that they proceeded on the other road between 100 and
150 feet before his attention was attracted to any engine ;
that he had gone so far on the left-hand track because his
wheels had got jammed. McNally had been driving over the
avenue several times a month for fifteen years. He says : " I
knew the train was coming, but I did not expect her at that
portion ; I did not expect to meet the train there," and he
saw the dummy before he saw any light. They were on a down
grade and turned out for the approaching wagon, because it
was usual at that portion of the route to give the right of
way to in-coming wagons. His excuse for not pulling out
upon the side of the road was that it was a sandy road and
the boughs of the trees would interfere with his load. That
load consisted of empty fish boxes. The tree branches, he
said, arched over the road but hung lower on the sides.

With this proof we fail to see that there was any case made
out for plaintiff. Reference to defendant's proof only makes
it clearer that there was no case made out for submission to
the jury. The plaintiff and McNally were driving on the
tracks late upon what they say was a dark night, at a place
in the avenue where they knew a train was about due, with
space of road on either side of the tracks to drive upon, and

they deliberately turned upon the track on which they expected a train to approach. They were both well acquainted with the locality and with the direction taken by trains. The fact that the side of the avenue was sandy, or heavy, does not furnish a reasonable excuse, for it was a down grade and their wagon no longer had its load. The low-hanging boughs, even if, as they say, likely to interfere with driving, were preferable as a risk to that of meeting the expected train. After they had gone on the other track they heard and saw the approaching train, but were evidently dilatory in endeavoring to avoid the impending danger. The conduct of plaintiff and McNally seems strange in view of all the facts, and difficult to account for if they had entire possession of their reasoning faculties.

It is not necessary to hold that the defendant had an exclusive right to the use of the street. It had the paramount right to the use of the street for its corporate purposes. Its tracks were lawfully there, and to its trains belonged the right of way. It was incumbent upon persons who chose to drive upon the tracks, in preference to using the side of the road, to be cautious and to exercise ordinary care and prudence. In such respect plaintiff and his companion were lacking, and the want of prudence is especially noticeable in view of the facts and of the knowledge they testified to possessing.

We do not think the dimness of the head-light, or the failure to blow a whistle or to ring a bell, under the circumstances, constitute negligence on the part of the defendant. The head-light was, as a fact, lit and was seen by plaintiff. We have no proof of any legal requirement under which the bell should be rung or the whistle blown continuously upon night trips of defendant's engines, and there was no crossing of streets at that part of the avenue to make such an indication of the approach of the engine necessary. Plaintiff in going upon the railroad track, when knowing of the approach of a train and having notice, in addition, of its coming a sufficient time to avoid any injury from it, could not, as a matter of law, recover, although the railroad company

may have been also negligent or have neglected some requirement.

Where negligence is the issue it must be an unmixed case. (*Dascomb* v. *B. & S. L. R. R. Co.*, 27 Barb. 227.) A verdict in favor of the plaintiff would have been set aside as against the evidence, and in such a case it is the duty of the court to nonsuit. (*Gonzales* v. *N. Y. & H. R. R. Co.*, 38 N. Y. 440; *Neuendorff* v. *Ins. Co.*, 69 id. 393.) We think the plaintiff was chargeable with the neglect of his comrade. He was conscious of the danger and apparently made no objection or effort to avoid it. He was engaged in a common employment with McNally. He had full control of his own actions, and, though on the safe track, did not object when, after telling McNally to turn out, they turned upon the dangerous track.

No decision cited conflicts with our view. The present case differs from that where a person accepts a gratuitous ride, as in the cases of *Robinson* v. *New York Central and Hudson River Railroad Company* (66 N. Y., 11); *Dyer* v. *Erie Railway Company* (71 id. 228); *Masterson* v. *New York Central and Hudson River Railroad Company* (84 id. 247).

After a careful consideration of this case, we think, in view of the knowledge possessed by plaintiff and of his conduct at the time, that there was contributory negligence and he was not entitled to recover

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except ANDREWS, DANFORTH and PECKHAM, JJ., dissenting.

Judgment reversed.