WILLIAM H. DURKEE, as Administrator, etc., of CROSBY DURKEE, Deceased, Respondent, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

*Negligence — notice required of the approach of a train — negative evidence as to signals — verdict against the weight of evidence — contributory negligence.*

While there is no longer any statutory requirement that railroad companies shall give notice of the approach of a train to a highway crossing by the ringing of a bell or the blowing of a whistle, yet such companies are not absolved from the obligations to give such a warning as will afford reasonable notice to one approaching the crossing.

Evidence of a negative character, to the effect that the witness did not hear the bell or whistle, while entitled to weight, does not prove that the signals were not given.

Where the evidence in an action brought against a railroad corporation to recover damages caused by its alleged negligence preponderates greatly in favor of the defendant, and the plaintiff's case is but slightly supported, and the jury renders a verdict for the plaintiff, it is the duty of the General Term to exercise an independent judgment, and, where proper, to grant a new trial upon the ground that the verdict is against the weight of the evidence.

The burden is upon the plaintiff in such cases to show freedom from contributory negligence, and it must appear that the injured person approached the place where the accident occurred with prudence and care and with senses alert to the possibility of approaching danger. This rule obtains whether or not the railroad company was negligent in giving proper signals.

APPEAL by the defendant, The President, Managers and Company of the Delaware and Hudson Canal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Washington on the 3d day of October, 1894, upon the verdict of a jury rendered after a trial at the Washington Circuit, and also from an order made on the 26th day of September, 1891, and entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes.

This action was prosecuted by the plaintiff as administrator to recover for the alleged negligence of the defendant in the management of its railroad train by reason of which the plaintiff's intestate was killed.

On the trial the plaintiff recovered a verdict; a motion was made

by the defendant to set aside the verdict, which was denied, and judgment was entered by the plaintiff.

*Lewis E. Carr,* for the appellant.

*A. V. Pratt* and *T. F. Hamilton,* for the respondent.

MAYHAM, P. J.:

Three grounds for a reversal of the order and judgment in this case are urged by the defendant on this appeal:

*First.* Because, upon the whole evidence given upon the trial, it does not appear that there was any omission of duty on the part of the defendant in operating the train causing the death of Durkee, plaintiff's intestate.

*Second.* The evidence was not sufficient to sustain a finding that the absence of signals of the approaching train, even if they were not given, caused the intestate's death.

*Third.* The evidence was not sufficient to sustain a finding that the deceased exercised the care he was bound to, to establish absence of contributory negligence on his part.

The first point, it seems from an examination of the case and the arguments of counsel in their briefs, is the alleged failure of the defendant to sound a whistle or ring a bell on approaching this railroad junction and road crossing, at which the accident occurred.

While it is true that there is no longer any statutory requirement that such signals shall be sounded at such points of danger, it is also true that railroad companies are not absolved from all obligations to exercise care and caution at such places, and a negligent disregard of that duty may constitute negligence for which the railroad company, in a given case, may be held liable. This proposition seems to be conceded by the learned counsel for the appellant, but it is insisted that the proof establishes that signals were, on this occasion, given by the operatives of the train; that the whistle sounded when the train approached within 1,200 to 1,500 feet from the crossing, and that the bell was rung until the collision occurred. And it is urged by the appellant that there is, upon this point, such an overwhelming preponderance of evidence as to make it the duty of this court to find with the defendant upon this question. The jury having found with the plaintiff on this disputed question of fact,

their verdict should not be interfered with on that question on this appeal, unless there is such an overwhelming preponderance of evidence on the part of the defendant as to lead to the conclusion that they had failed to have fairly and properly considered the evidence, or had adopted some erroneous method of calculating its weight and force.

The evidence on the part of the plaintiff relied upon to establish his contention that no signals or warning were given, is the testimony of Green, who was riding with deceased and driving the horse at the time of the accident. He says he looked and listened, and heard no whistle and no bell until just as the train struck him. Plaintiff proved by two other witnesses who stood at the depot, and saw the whole transaction, that they heard no bell or whistle, but they state that their attention was not specially called to that fact at the time, and that they were not listening for a signal from the train.

On the part of the defendant it was proved by the testimony of nine witnesses, who were in hearing and sight of the train, that the bell was rung, and by some of them that the whistle was sounded as the train approached the place of the accident. Daly, who was near the depot, and Barrett, who was at the depot, and Gilbert, the conductor, Keating, the engineer, who was riding on the engine, testified to the sounding of the whistle and the ringing of the bell. Wooden, the express agent, Hogan and Whipple, trainmen on the train, and Finn, who was employed in the yard, testified to the ringing of the bell as the train approached the crossing and at the time of the accident.

All these witnesses assumed to testify to what they saw and heard. Their testimony is, therefore, of an affirmative character, and, if not true, must be regarded as deliberate perjury.

On the other hand, the testimony of the plaintiff's witnesses, who say they did not hear the bell or whistle, is of a negative character, and, while it may be entitled to great weight, it does not prove positively that the signals were not given.

In *Culhane* v. *N. Y. C. & H. R. R. R. Co.* (60 N. Y. 133, 137) ALLEN, J., in pronouncing the opinion of the court and in discussing this character of evidence, uses this language : " As against pos-

itive affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it to authorize the submission of the question to the jury. It must appear that they were looking, watching and listening for it; that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative. A mere 'I did not hear' is entitled to no weight in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact."

Applying the reasoning of this case, and the rule here enunciated to the case at bar, it would seem that the plaintiff had failed to prove the negative except by the testimony of the witness Green. He testifies that he looked and listened, but the force of his testimony is somewhat weakened by the testimony of Baldwin and Moran, who say that Green and the intestate appeared to be in conversation and did not appear to be observing the approaching train. Baldwin and Moran, who swear they did not hear the whistle, state that they were not listening for a signal. All of the defendant's witnesses upon this branch of the case swear to what they claim to have seen and heard.

But it is urged by the learned counsel for the plaintiff that their testimony should be taken with a great degree of allowance, for the reason that they, or most of them, were employees of the company. While the jury might take that fact into consideration, it does not seem that that fact alone would justify the jury in entirely disregarding and treating as untrue the testimony of so large a number of witnesses, when no other circumstance is presented to discredit them.

It is urged by the defendant that Green, who has an action pending against the company for the same accident, had a stronger motive for giving color to his testimony than any of the witnesses introduced on the part of the defendant.

Viewing this testimony in the light of the rules for weighing evidence, it would seem that there was an overwhelming preponderance of proof in the case that the whistle was blown and the bell sounded at the time the train approached this crossing; and while, as we have seen, the court should not interfere, in a substantially evenly balanced

case, or even where there was an apparent preponderance of evidence, with the conclusion arrived at by the jury, still it would seem if in any case it was the duty of the court to interfere with the verdict upon questions of fact, this is such a case.

In *Kaare* v. *The Troy Steel & Iron Co.* (139 N. Y. 369) EARL, J., in pronouncing the opinion of the Court of Appeals, after adverting to the rule that deference may properly be paid to the views of the trial judge who heard the witnesses testify, in cases where there is a fair conflict in the evidence, yet no marked preponderance either way, adds as follows:

"But where there is a vast preponderance in the evidence in favor of the defendant, and the defense is supported by numerous witnesses, apparently entitled to credit, and the plaintiff's case stands upon his own evidence, either unsupported or slightly supported, the General Term should exercise an independent judgment and give the defendant appealing to it the full benefit which the law, by the right of appeal, intends he should have."

The learned judge in using this language is discussing the duty of the General Term to interfere on appeal by an examination and review of the facts and by reversing where the verdict of the jury is manifestly against the overwhelming weight of evidence. And he adds: "If under such circumstances the General Term will refuse to grant a new trial on the ground that the verdict is against the weight of evidence, it is difficult to conceive of any case where it ought to do so, and an appeal to it in such cases will be entirely useless."

It would seem to follow that in cases of this character the General Term, on appeal, is under the same obligation to review and reverse the verdict of a jury and judgment thereon, when it is overwhelmingly against the weight of evidence, as it is to reverse for errors of law committed by the judge, where the question has been properly presented by a motion for a new trial on the judge's minutes on the ground that the verdict is against the weight of evidence.

It is insisted by the learned counsel for the defendant that the trial judge erred in discussing before the jury the defendant's obligation to give some signal by the ringing of a bell or sounding of a whistle, or in some other way, on approaching the highway crossing.

While the instruction of the trial judge to the jury upon that branch of the case may not be as full and complete as the defendant's counsel might wish, yet we fail to see that any erroneous ruling or direction by the trial judge was made upon that point. The effect of the charge was, that notwithstanding the repeal of the statute, which required railroad companies to signal the approach of a train at a highway crossing by the ringing of a bell or blowing of a whistle, they were not absolved from giving such warning as might afford reasonable notice to the traveler upon the highway of the approach of the train. Such instruction was not erroneous or misleading.

It is further insisted by the learned counsel for the defendant that the case does not disclose facts from which it can be found that plaintiff's intestate was himself free from negligence which caused or contributed to the injury, and that if it can be held that defendant was negligent in omitting to give proper signals still the plaintiff should not recover because of such failure of proof.

The undisputed facts are that intestate and Green were riding in a wagon belonging to intestate drawn by Green's horse; that Green was driving; that from the point where defendant's train first hove in view to where intestate and Green were in the highway was a distance of fifty feet; that on either side of the highway was a clear, level, unobstructed surface upon which the horse and buggy might have been turned, and that proper care and attention on the part of Green and the intestate, had they looked and listened, would have enabled them to have turned aside and avoided the collision, and that in failing to do so the intestate was guilty of negligence which contributed to the injury.

To meet this contention on the part of the defendant it is claimed by the plaintiff that the horse attached to the vehicle in which intestate was riding became unmanageable, and despite the efforts of the driver ran over this intervening distance between the train and the vehicle and dashed upon the track, without fault of the intestate or Green, and that the negligent omission of the trainman to give signal of the approach of the train was the cause of the horse becoming frightened.

While there is evidence that Green on approaching the railroad crossing looked and listened there is no proof that intestate took

that precaution; and it is proved by the evidence of Moran that he and Green were talking while driving leisurely along the road about the time of the collision. We find in this testimony no evidence affirmatively establishing the freedom of the intestate from contributory negligence.

In *Brickell* v. *The N. Y. C. & H. R. R. R. Co.* (120 N. Y. 290), which was somewhat analogous to the case under consideration, where the intestate was riding in a buggy seated beside a driver and the approaching train could be seen for some distance before crossing at a location well known to both, and that neither made any effort by looking or listening to discover the approach of the train, it was held that the plaintiff was properly nonsuited on the ground of contributory negligence of the intestate.

It is true that in that case the driver was hired by the deceased to convey him to a given point. The case at bar differs from that in this, that the deceased was riding in his own buggy which was drawn by a horse owned by the driver. But that fact, instead of releasing the deceased from the obligation of looking and listening, would seem to increase that obligation, and POTTER, J., in delivering the opinion in the case cited, uses this language:

"The general rule in this class of cases is that the burden of establishing affirmatively freedom from contributory negligence is upon the plaintiff, or, in the language of the opinion in *Tolman* v. *S., B. & N. Y. R. R. Co.* (98 N. Y. 202), that 'plaintiff approached the crossing where the collision and injury occurred with prudence and care and with senses alert to the possibility of approaching danger,'" and the learned judge adds: "And this rule obtains even where the railroad company neglects to ring its bell or sound its whistle, as required when its trains approach a crossing."

In *Donnelly* v. *The Brooklyn City R. R. Co.* (109 N. Y. 16) the plaintiff was riding on a fish wagon with one McNally, which the latter was driving, and the plaintiff gave some direction as to where McNally should drive, and, following that direction, the wagon collided with a moving train on defendant's railroad, and plaintiff was injured. It was held that the plaintiff's evidence showed contributory negligence on the part of the plaintiff and his companion, with which he was chargeable, and a refusal to nonsuit was held error.

Tested by these cases and by the well-settled law, we are of opin-

ion that the plaintiff failed to show want of contributory negli-
gence, and that for that reason the motion for a nonsuit should
have been granted, and that the verdict in favor of the plaintiff
cannot be sustained, and that it was error on the part of the learned
judge to refuse to set aside the verdict and grant a new trial on
the minutes on the defendant's motion.

The judgment must be reversed and a new trial granted, costs to
abide the event.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed and a new trial granted, costs to abide the
event.