## THE DISTRICT OF COLUMBIA *v.* ASHTON.

STREETS AND HIGHWAYS; CONTRIBUTORY NEGLIGENCE.

In an action to recover damages for personal injuries by a street car
    conductor against a municipality, the plaintiff is precluded by
    his own negligence from recovering, when the testimony
    shows that he was injured in the evening while standing on the
    running-board of an open car, registering a fare, by being
    struck by one of the timbers of a trestle erected over sewer
    excavations which were being made by defendant's contractor
    in the street, which timber was within about six inches of the
    handle of the car; that for about six weeks he had passed the
    place where he was injured on his car daily many times in each
    direction, and had seen the trestle but not the timber which
    struck him; that he was aware of a notice given by his superin-
    tendent requiring cars to be run slowly along the sewer con-
    struction and instructing conductors to stand on the platform
    of their cars and caution passengers about the danger of put-
    ting their arms and heads out of the cars, and use every effort
    to prevent accident; and that although there were no lamps
    lighted on the trestle at the time and at the place of the acci-
    dent, the street was well lighted by electric light, so that the
    trestle, timbers and a sign thereon could be seen by anyone
    looking in their direction.

No. 871. Submitted April 11, 1899. Decided May 2, 1899.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury in an action against the District of Columbia to recover damages for personal injuries. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. S. T. Thomas*, Attorney for the District of Columbia; *Mr. A. B. Duvall*, Assistant Attorney, and *Mr. H. W. Sohon* for the appellant.

*Mr. W. V. R. Berry, Mr. Benj. S. Minor* and *Mr. A. A. Lipscomb* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case was instituted by the appellee, C. Henry Ashton, against the appellant, the District of Columbia, to recover damages for personal injuries inflicted by coming into conflict with a trestle erected by the contractors of the appellant over a sewer excavation in F street, northwest, while the appellee was riding past the same on the running-board of an open street car, on the evening of April 25, 1897. The trestle was a frame structure erected to facilitate the removing of the earth excavated from the sewer as the work progressed thereon, and was necessary for the performance of the work of building the sewer, by reason of its depth and size. The sewer was being constructed along the south side of the street car tracks on F street, between Thirteenth and Fourteenth streets, and the trestle frame was movable and was moved along over the sewer as the excavation advanced. The work on the sewer was in progress several months before the accident occurred. In the construction of the trestle a horizontal timber projected out to within about six inches of the handle-bar of the car as it passed along the work, but, according to the evidence in the case, there was space sufficient between this projecting timber, against which the appellee was struck, and the car to enable a person to ride safely on the running-board of the car.

The case was tried on the general issue plea of not guilty; and upon the close of the evidence the court gave several special instructions on request of the respective parties, and enforced them by quite an extensive general charge to the

jury.   And the verdict and judgment being for the plaintiff
the defendant has appealed.

The principal question in the case is, whether, upon the
evidence produced at the trial, and especially upon that given
by the plaintiff himself, the case should not have been with-
drawn from the jury, upon a direction by the court that the
verdict should be rendered for the defendant; or if not such
direction, whether the jury should not have been instructed
that, with the knowledge possessed by the plaintiff of the
existence of the trestle and the danger thereof, and the ad-
monition previously given him by the superintendent of the
street railroad to exercise special caution in regard to the
trestle, it was incumbent upon the plaintiff to use special
and particular care to avoid accident while passing the
trestle, and not merely ordinary care?

In order to determine these questions, it is proper that we
have in view all the evidence that was given on the part of
the plaintiff, as set out in the bill of exception.   This we set
out in the language employed in the bill of exception itself.

In the bill of exception it is stated that the plaintiff, on
his part, "offered evidence tending to prove that on the 25th
day of April, 1897, about 8.15 o'clock p. m., the plaintiff, a
conductor on one of the cars of the Metropolitan Railroad
Company, was standing on the running-board or side-step
on the south side of an eastbound car on F street, between
Thirteenth and Fourteenth streets, near Fourteenth street,
northwest, and had just collected and was in the act of
registering the fare, when he was struck on the head and
shoulder and thrown to the ground, and had one of his
fingers cut off, and was otherwise severely injured; and that
plaintiff had not been at work the two days prior to the
accident.   And the plaintiff further offered evidence tend-
ing to prove that the defendant municipal corporation was,
at said time, through its servants and contractors, engaged
in building a sewer in said street between the tracks on
which said car was running and the south curb of said

street, and had erected over the trench or excavation for said sewer an iron trestle seven and a half feet high, over which were run cars loaded with earth taken from said excavation to the west end of said trestle, where said earth was dumped through a chute into wagons; that the horizontal timbers on which said chute rested, and the upright timbers supporting the same, were so near to the tracks of the railroad as to be dangerous to persons riding past the same on the running-board of said cars, and that the plaintiff's injuries were caused by striking some part of the said horizontal timber, and that the distance between the said horizontal timber and the handle of the car was about six inches; that at the time said injuries were received there were no lamps lighted on said trestle at the place where the injury occurred, but that the street was well lighted by the usual electric lights on the street and extra electric lights in front of the Ebbitt House, and that said trestle, timbers, and the sign thereon could be seen by anyone looking in their direction; that the defendant, by its contract with the contractors, agents, and employees, retained control of the sewer and the streets through which the same was being built. The plaintiff testified that he had been a conductor on said street railroad for six weeks, and had passed the place where he was injured on his car nearly every day in that time seven, eight, or nine times in each direction; that he had seen the trestle, but had not noticed the timber against which he struck; that the trestle framework had been moved along as the work progressed, and that the trestle had been placed in the street at the point where the plaintiff was injured four or five days or a week prior to the accident; that the cars were always run slow along said excavation because of the danger, and the car on which plaintiff was riding was going slow when he was struck, and that prior to the accident he had seen a notice to the following effect, posted on the bulletin board at the carsheds where he received instructions, to wit:

" ' Motormen must run slowly along the sewer construction on F street. Conductors are to stand on the platform of their cars and caution passengers about the danger of putting their arms and heads out of the car windows, and use every effort to prevent accidents. HEIDLEMAN, *Supt.*'

" That the Heidleman mentioned was the superintendent of the road; that at the time of said injury he was not thinking of the presence of said danger, but was attending to his own business in the discharge of his duties as conductor."

There was testimony given on the part of the defendant, in some respects at variance with the facts proved on the part of the plaintiff; but with no such material variance as to affect the general presentation of the case, as made by the evidence on the part of the plaintiff. There were two witnesses who testified that, in their opinion, the trestle was dangerous.

The court granted three special prayers offered for instruction by the plaintiff, and of thirteen prayers offered by the defendant, all except three were granted,—those refused being the fifth, eleventh, and thirteenth; and this last or thirteenth prayer was, that, upon the whole evidence, the court would instruct the jury to return their verdict for the defendant.

And with the special instructions granted, the court proceeded to deliver a general charge to the jury, repeating, in the course of the charge, the special instructions granted, and repeated the first and second special instructions granted on the request of the plaintiff and which last-mentioned instructions were in these terms:

" The defendant is bound to use reasonable care and reasonable precaution to keep and maintain its streets in good and sufficient repair, to render them reasonably safe for all persons passing on or over the same; and if the jury believe from the evidence that the defendant failed to use reasonable care and precaution to keep F street, northwest, near

Fourteenth street, in such repair as to be reasonably safe for passers-by on the street cars, subject to the right of the municipality, the defendant, to make sewers and keep them in repair, and that the injury complained of to the plaintiff resulted from that cause, as charged in the declaration, which you will carry with you to your rooms and may read, and that the plaintiff sustained damages thereby, namely, by striking against the trestle or machine described, while the plaintiff on his part was on his car as conductor, *using. ordinary care while passing the obstruction described in evidence, then the plaintiff is entitled to recover in this case.*"

The second special instruction given and repeated in the charge was this:

"Again you are instructed that if you find from the evidence that the District of Columbia employed a contractor to build the sewer on F street, and that the contractor failed to have the excavation therefor and the trestle needed for the building of said sewer guarded by light, and built the said trestle or structure so that a part thereof was close enough to the running-board of the cars passing on said street so that the plaintiff, a conductor, while his car was going eastward, passing on the said *running-board in the performance of his duties, and while exercising ordinary care to avoid contact with said structure under all the circumstances,* and *under the circumstances of his obligation to avoid contact with said structure,* was struck by said structure and injured, *then the plaintiff is entitled to a verdict.*"

These instructions were excepted to by the defendant, as were all the instructions granted at the request of the plaintiff, and exception was also taken to the refusal to grant the fifth, eleventh, and thirteenth prayers offered by the defendant.

The first and principal question on the facts of the case, as established by the plaintiff himself, and which he can not controvert, is, whether the thirteenth prayer of the defendant should not have been granted, and the case taken from the jury?

There can be, of course, no question of the right of the defendant, the municipal government of the District of Columbia, to use the streets of this city for the purpose of constructing sewers under the beds thereof; nor can there be a question of the right of the municipal authorities to employ and use the most approved and best adapted means and appliances for the execution of the work of improvement. And so the agents and contractors of the municipal government have the same right to employ and use the most effectual and best adapted instrumentalities for accomplishing the work of improvement, that the municipal government itself could use or employ in such work. The making of culverts, drains and sewers upon or under the surface of the streets by the municipal authorities are among the ordinary powers of such governments over the public streets of the city; and such power may be exercised whenever deemed proper, except where it may be restricted by express legislation. And while such improvements are in course of construction, all persons using the streets must take notice of the work; and in their use of the street must exercise their ordinary powers of observation, and not recklessly or unnecessarily incur risk; and where the nature or condition of the work, and the implements employed therein, obviously require care on the part of those using the street, special care and caution may reasonably be insisted upon, in order to avoid the risk of accident; and if a party recklessly or needlessly incurs a risk of danger and suffers thereby, he can have no remedy as against the municipality. The only restriction upon the exercise of the municipal authority over the streets in making public improvements therein is, that the work shall be done in a proper and reasonably careful manner to avoid injury, and that the means or instruments employed in doing the work shall be reasonably adapted to the accomplishment of the undertaking, and not be of an unnecessarily dangerous character.

Now, in this case, there is no pretense or attempt to show,

that the trestle with which the plaintiff collided was not a proper instrument or structure to be employed in carrying on the work of excavating the sewer, and the only objection urged to it is, that there was a projecting timber that approached too near the passing car.  But this relation of the trestle to the passing car had existed for a considerable time, and the cars running on these tracks had run for a good many days, and a great many times during day and night, without an accident.  The plaintiff admits in his own testimony that he had been in the employ of the street railway company as conductor for about six weeks, and that he had passed the place where he was injured on his car nearly every day, in that time, seven, eight or nine times in each direction; that he had seen the trestle, but had not noticed the timber against which he was struck. He was therefore fully informed of the existence and location of the trestle, and he was certainly required to use his senses and to observe the near approach of the trestle to the running car.  He ventured out on the running or footboard of the car to gather fares from passengers, while passing this trestle frame, and it was during that time that he was injured.  It is not denied that if he had been upon the platform of the car, where he was required to be while passing this trestle, the accident would not have occurred.

He concedes in his testimony that he was aware of the notice given by the superintendent of the railroad company, requiring motormen to run slowly along the sewer construction on F street, and that conductors were required *to stand on the platform of their cars* and caution passengers *about the danger of putting their arms and heads out of the car windows, and use every effort to prevent accident.*  He was thus fully admonished by the superintendent of the company that there was danger in passing the trestle erected over the sewer, and that he should be careful to avoid accidents.

But instead of paying heed to this warning, he utterly disregarded it, and by his conduct in exposing himself, gave

an implied assurance to passengers that it was safe to ride on the running-board while passing the trestle.

It is not said or claimed by the plaintiff, that for the want of proper light he did not know where the trestle was, or that he did not know that he was passing it when he was injured. But the proof is that at the time the injury was received, " there were no lamps lighted on the trestle, at the place where the injury occurred; but that the street was well lighted by the usual electric lights on the street, and *extra* electric lights in front of the Ebbitt House, and that said trestle, timbers, and the sign thereon, could be seen by any-one looking in their direction."

On the facts of this case, as established by the plaintiff himself, and the truth of which he can not question or dispute, the case seems to be clearly one of a person voluntarily exposing himself to obvious danger, without any reason of necessity or propriety to justify him in so doing. And that being so, the plaintiff was, as matter of law, guilty of negligence, and assumed all the risk attending his act. This proposition is elementary in its character, and is maintained by many decided cases, and notably by the case of *Railroad Co.* v. *Jones*, 95 U. S. 439, 442, 443,—a case occurring in the District, and in which many of the previous cases are cited and approved. *Hickey* v. *Boston & Lowell RR. Co.*,14 Allen, 429; *Todd* v. *Old Colony RR. Co.*, 3 Allen, 18, and same case, 7 Id. 207; *Gavett* v. *M. & L. RR. Co.*, 16 Gray, 501; *Frazer* v. *S. & N. Alabama RR. Co.*, 81 Ala. 185; *Schoenfield* v. *Milwaukee City RR. Co.*, 74 Wis. 433; *Loeffler* v. *Missouri Pacific RR. Co.*, 96 Mo. 267; *Donnelly* v. *Brooklyn City RR. Co.*, 109 N. Y. 16; *Ohio & Miss. RR. Co.* v. *Hill*, 117 Ind. 6.

This case would seem to fall fully within the principle of *Hickey* v. *Boston & Lowell RR. Co.*, *supra*, referred to with approval in *Railroad Co.* v. *Jones, supra.* In that case the injury was to a passenger, but in principle there is nothing to distinguish that case from the present, in respect

to the question of contributory negligence of the plaintiff. In that case, in discussing the question of contributory negligence, as a bar to the right to recover, the court said: "If the injury happens while the passenger is occupying a place provided for the accommodation of passengers, nothing further is ordinarily necessary to show due care. But when the plaintiff's own evidence shows that he left the place assigned for passengers and was occupying an exposed position, and that the injury was due in part to the fact of such position, he must necessarily fail, unless he can make it appear, upon some ground of necessity or propriety, that his being in that position was consistent with the exercise of proper caution and care on his part."

In this case the place assigned to the conductor was the platform of the car, with the admonition that he should remain there while passing the trestle at the sewer excavation. And the only fact relied on by the plaintiff to show ground of necessity or propriety for his being on the running-board of the car while passing the trestle was, that there was no passage through the car, and that he had to use the running-board to reach the passengers to collect fares. But surely that fact affords no justification for his assuming what he must or should have known was a dangerous risk. The few moments required to pass the trestle could certainly have been spared in the work of collecting fares, especially as he had been directed to keep his position on the platform while passing the trestle. The plaintiff took the risk of his own volition, and against the instruction and admonition of his superior in the control and direction of his employment; and though a serious and an unfortunate accident occurred, there is no principle of justice that would impose the consequence of that accident upon other than himself. In the case of *Railroad Co.* v. *Jones, supra,* the question upon which the case turned was, whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution, that but

for such negligence or want of care and caution on his part the misfortune would not have happened. And the court, in disposing of that proposition, upon the facts of that case, said, what is especially applicable to this case, that the plaintiff himself was the author of his own misfortune; and that the case was clearly brought within the predicate of *mutual* negligence laid down by the court, and upon that conclusion the plaintiff was not entitled to recover.

Indeed, if it be conceded that there was a want of skill, or that there was negligence, in the construction or placing of the trestle, still, upon the conceded facts established by the plaintiff himself, and the application of the principle of the *mutual* contribution to the result, the contributory negligence of the plaintiff was such as, in law, to preclude his right to recover.

We are of opinion that the court below ought to have granted the thirteenth prayer offered by the defendant, and taken the case from the jury.

We must, therefore, reverse the judgment and remand the cause for a new trial.

*Reversed and cause remanded for new trial.*