## Vida Bush v. Union Pacific Railroad Company.

### No. 11,859. (64 Pac. 624.)

1. Railroads—*Injury at Crossing.* One attempting to cross a railroad-track on a public highway, who is familiar with and relies upon a rule of the company which prohibits trains from following one another within ten minutes, is guilty of contributory negligence in going upon the track without looking and listening for an approaching train; and this is true, although the train which caused the injury was a "wild train" and followed the preceding one within one or two minutes.

2. ———— *Contributory Negligence.* The object that attracts the attention of a traveler so that he is excusable in not looking and listening for an approaching train before going upon the crossing of a railroad-track on a public highway must be something that threatens danger or confuses or perplexes such traveler.

3. ———— *Negligence of One Riding with Another.* Where one person is riding with another for the mutual pleasure of both, with equal opportunity to see and ability to appreciate the danger, and is in fact looking out for herself, but makes no effort to avoid the danger, she is chargeable with the want of care which results in injury.

Error from Shawnee district court; Z. T. Hazen, judge. Opinion filed April 6, 1901. *In banc.* Affirmed.

Bush v. Railroad Co.

### STATEMENT.

THIS action was brought by the plaintiff in error to recover damages for injuries which she claims she sustained at a railroad-crossing by reason of the negligence of the defendant in error.

The facts are substantially as follows : The plaintiff, a young lady, was invited by W. A. C. Bowhay to ride with him on the evening of August 16, 1899. They drove east on what is called the Grantville road to Calhoun bluffs. This road runs east on the north side of the Santa Fe and Union Pacific tracks for about three-fourths of a mile from Topeka, where it crosses the tracks, and from there it runs on the south side of the Union Pacific and within seventy-five feet of its tracks, and between it and the river to the bluffs. They started on their return trip at about 9 : 15 or 9 : 20, and drove slowly back on the same road, until they arrived within 150 or 200 feet of the crossing of these two tracks. Their attention was attracted to a freight-train on the Union Pacific railroad coming from the east. They stopped for this train to pass. They then proceeded, and, as they started, both of them looked down the track to ascertain if another train was coming, and none was in sight. In driving from the point where they stopped for the train to pass, until they arrived within fifty feet of the crossing, they were driving in a westerly direction parallel with the track. At this point the road turned at a right angle to the right to cross the track. From this point either could have seen this approaching train at least 1300 feet. From the time they started from the point where they had stopped for the freight-train, neither of them looked again until the front feet of the horse were upon the first rail of the track, when the plaintiff in error looked down the railroad, saw the

train, and exclaimed that a train was approaching. Bowhay made an effort to get out of the way, but the train struck the horse, killing it, demolishing the buggy, and seriously injuring the plaintiff in error.

Neither of them was familiar with this crossing. Bowhay had crossed it but once prior to this time, and that was in the preceding July, on a dark night, and in approaching it this time he says that he was not fully aware of what crossing it was. This was a clear moonlight night, no wind blowing. Bowhay testified that he thought he was perfectly safe in crossing, as, under the rules of the company, one train could not follow another in less than ten minutes. He was not expecting a train from that direction for at least ten minutes, because of the fact that the freight had just passed. The plaintiff in error did not testify on this question. This crossing is about three-fourths of a mile from Topeka. The highway upon which these people were driving is one of the main highways into the city. The other roads from that side of the city, and beyond this point, intersect this road before reaching this crossing. This road is used very con-considerably, not only by persons coming to and going home from the city, but by residents of Topeka who drive out in the evening for pleasure. The distance between the Santa Fe and Union Pacific tracks at this point is ninety-nine feet.

This incoming passenger-train neither blew the whistle at the whistling-post nor rang the bell at the crossing. It was behind time and running at about its usual schedule rate—fifty miles an hour. When the freight had cleared the crossing, these parties started to drive across, and the time between which the freight-train had cleared this crossing and the arrival of the passenger, according to the evidence, could

not have exceeded two minutes and may not have exceeded one.

When the plaintiff in error had introduced her evidence and rested, the defendant in error filed a demurrer thereto, which the court sustained, and a judgment was rendered against the plaintiff in error for costs. She brings the case to this court alleging error.

*Allen & Allen,* for plaintiff in error.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: It is not contended by counsel that plaintiff in error is entitled to recover in this action unless her conduct in going upon the railroad-crossing without looking for an approaching train can in some way be excused. They forcibly insist that she is excusable in that the railroad company, by its agents, negligently and wrongfully misled' and put her off her guard, and that, but for such negligence and wrongful acts, she would not have gone upon the track. It is claimed that, being a young woman of only seventeen years, she should not be held to that strict accountability required of one of maturer years. It is further contended that, even if Bowhay was guilty of contributory negligence, such negligence was not imputable to her.

In Elliott on Railroads, section 1171, the principle involved in this first proposition is stated as follows :

"Where the employees of a railroad company, by negligence or wrongful acts, mislead a traveler and put him off his guard, the company may be liable, although the traveler may have done that which but for the wrongful or negligent acts of the company must

have been considered negligence on his part. The negligence of the company will not, however, excuse the traveler for a failure to himself exercise ordinary care."

It is but ordinary care for one who is attempting to cross a railroad-track to look for an approaching train, and no negligence on the part of defendant in error would excuse the plaintiff in error from exercising such care.   One attempting to cross a railroad-track must use his senses of sight and hearing and not rely entirely upon some rules, or supposed rules, of the company.   The rules put in operation from time to time by a railroad company regulating the speed of its trains, the distance each shall run or the time or distance such trains shall remain apart are mere conveniences better to enable such company systematically to carry on its business, and are not intended to be a warning or notice to the public that trains will not be run except on schedule time.

In *T. W. & W. R. W. Co. v. Jones*, 76 Ill. 311, 315, in speaking of irregular trains, the court used this language :

"There is nothing which can relieve a person from the duty of exercising due care and caution at a railroad-crossing.   It is not always the case that trains are on time, as is well known ; hence the pressing necessity of using vigilance, care and caution at all times."

In *Wilds v. The H. R. R. R. Co.*, 29 N. Y. 325, it was remarked that "no one can be secure against being met by an engine except by ascertaining by his own senses that no train is approaching in either direction within a distance which will endanger his safety."   In *Wilcox v. Rome, Watertown & Og. R. R.*

*Co.*, 39 N. Y. 358, 362, the court, in quoting this language, said:

"There is much force in this suggestion; and it would, in my opinion, furnish a very imperfect and unsafe protection to a traveler to rely merely upon his knowledge of the time-table, or upon the fact that an unusual train had passed in an opposite direction, and, therefore, none other could be expected. The reason urged, I think, furnishes no sufficient excuse for the neglect of the deceased to use his faculties, and for neglecting to exercise a proper degree of vigilance and care."

"Swiftly moving and irregular trains are to be expected at such crossings, and it is the duty of persons about to go upon them to look and listen for such trains, as well as for those upon time or which move slowly." (*Judson v. Great Northern Ry. Co.*, 63 Minn. 248, 65 N. W. 447.)

A traveler should always approach a railway-crossing under apprehension that a train is liable to come at once, and, while he may presume that those in charge will obey the law by giving the signals, the law will nevertheless require that he obey the instincts of self-preservation and not thrust himself into a situation which, notwithstanding the failure of the company, he might have avoided by the careful use of his senses.

"So that it seems that, though a person or traveler may know the usual time of the running of different trains, from the fact that they may know that a train has passed, and that another train will not be along for some time, according to their information or the time-table, it does not relieve him of the duty of observing care and prudence, or of using his faculties when he approaches and attempts to cross a railroad-track. . . . He who fails to exercise this precaution, when there are no circumstances to disturb his judgment or impede his action at the time, is not

using ordinary care." (*Durbin v. Oregon R. R. etc. Co.*, 17 Ore. 5, 11 Am. St. R. 778, 17 Pac. 5.)

"The fact that the train is behind time, and is running faster than usual at the crossing, does not excuse him from exercising the care and caution required of him when the train is running at its usual rate." (*The Cincinnati, Indianapolis, St. Louis & Chicago Ry. Co. v. Howard*, 124 Ind. 280, 24 N. E. 892, 8 L. R. A. 593.)

We have held that it is negligence *per se* for a railroad company to run its train over a crossing without sounding a whistle, but we have also held that this does not excuse one attempting to cross a track from listening and looking for approaching trains.

It is also contended that the plaintiff in error is excusable for not exercising ordinary care because of the fact that this train was running fifty miles per hour, an unusually high rate of speed, at this particular crossing. The only evidence on this point is the testimony of Geo. W. Veale, jr., who says he was on the train; that it was running on its schedule time—about fifty miles an hour—when it passed this crossing. This road is considerably traveled, but no persons were there on this particular evening beside plaintiff in error and Mr. Bowhay.

Another contention of plaintiff in error on this point is that her attention was attracted to the outgoing freight-train which had just passed the crossing over which she wished to travel. We think in this there can be found no excuse whatever. This train threatened no danger; it had passed the crossing over which she desired to go and was rapidly receding from sight. It must be true that an object which attracts the attention of one attempting to cross a railroad which will excuse him from looking and listening for an approaching train must be one that necessarily

distracts his attention; it must be one that at least indicates danger or some risk; it must be an object or a condition that has a tendency to perplex or confuse him at a time when it is demanded of him that he exercise judgment and act promptly. Certainly the departure of the freight-train, attended with no unusual circumstances, was not sufficient to excuse one from exercising ordinary care when attempting to cross a railroad-track on a highway. The plaintiff in error knew that she was approaching a railroad-crossing; she was compelled to stop for a passing freight-train. She made this stop 150 or 200 feet from the crossing. The evening was still, no wind blowing, and nothing to prevent her from hearing the approaching train except the noise of the departing freight-train. When within fifty feet of the crossing she could have seen this train 1300 feet away. From that time she neither looked nor listened.

It is contended by plaintiff in error that, if Bowhay was guilty of contributory negligence in driving upon the track without looking or listening for approaching trains, such negligence is not imputable to the plaintiff in error. The want of care which resulted in injury to the plaintiff in error is chargeable to her. They were both engaged in a common purpose, mutual pleasure. Her opportunity and ability to see and appreciate the danger were equal to his; she was in no way relying upon him. It is true he furnished the vehicle and did the driving, but she seems to have acted independently of him. When they started from the point where they had stopped for the freight-train, she saw the track, knew they intended to cross it, appreciated the danger, and did not advise or suggest that they be more cautious, but did look for an approaching train, and was, in fact, the first to see it.

The case of *Reading Township v. Telfer*, 57 Kan. 798, 48 Pac. 134, relied upon by counsel for plaintiff in error, is easily distinguishable. In that case there was no charge made that Mrs. Telfer was guilty of contributory negligence. The only question was whether or not the contributory negligence of the husband was imputable to her. In this case, the direct charge is made that plaintiff in error was herself guilty of contributory negligence. In *Donnelly v. Brooklyn City R. R. Co.*, 109 N. Y. 16, 22, 15 N. E. 733, the court, in speaking of the negligence of one who is riding with and accompanying the driver, said:

"We think the plaintiff was chargeable with the neglect of his comrade. He was conscious of the danger and apparently made no objection or effort to avoid it. He was engaged in a common employment with Mr. McNally. He had full control of his own actions, and, though on the safe track, did not object when, after telling McNally to turn out, they turned upon the dangerous track."

In *Brickell v. N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 290, 293, 24 N. E. 449, the court said: "It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger and avoid it if practicable."

We think the demurrer to the evidence was properly sustained and the judgment of the court below will be affirmed.