In re Pepoon, 91 N. Y. 255; In re Cottrell's Will, 95 N. Y. 329; In re Hesdra's Will, 119 N. Y. 615, 23 N. E. 555.

It is true, as suggested by the learned counsel for the contestants, that it does not appear by the evidence of Nostrand that he saw Adams sign the attestation clause in the presence of the testatrix, nor does it appear by his evidence that he did not see him sign it in her presence. The following is his evidence in that respect:

"Q. Who was the other subscribing witness? A. I cannot remember. Q. Do you recollect the fact that there was another subscribing witness? A. I should think there was. Q. Can you recollect whether the other subscribing witness signed the paper at or about the same time? A. No further recollection than that my signature is there, and the request that I should sign her last will."

Nor does it appear by any oral evidence that Adams was acquainted with the testatrix. But that he did sign the attestation clause does appear by the proof of his signature. This, in view of the fact of his death and of the attestation clause, was, within the meaning of the statutory provisions before referred to, sufficient prima facie to effectually give to him the relation of subscribing witness, and to support the inference that he became such in a manner requisite to that relation for the purpose of the due execution of the will.

The cases cited by the counsel for the contestants do not seem to be applicable to the state of facts by which the presumption in the present case is deemed supported. In Woolley v. Woolley, 95 N. Y. 231, it was held that the attestation clause was not effectual to raise the presumption of the formal and due execution of the will against the positive evidence to the contrary. In that case there did not seem to have been a failure in memory of the subscribing witnesses. Their evidence was to the effect that they did not see the deceased sign the will, and that she did not acknowledge to them that she had signed it. In Lewis v. Lewis, 11 N. Y. 220, the question presented was substantially the same, with a like result; and the same may be said of Mitchell v. Mitchell, 16 Hun, 97, 77 N. Y. 596, and In re Van Geison's Will, 47 Hun, 5.

The conclusion follows that the decree of the surrogate's court should be affirmed. All concur.

---

(16 App. Div. 111.)

SCHRON v. STATEN ISLAND ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

1. IMPUTABLE NEGLIGENCE—PERSONS ENGAGED IN JOINT VENTURE.
Two persons, with a wagon, engaged in moving furniture, are engaged in a joint venture, and the negligence of one in the management of the wagon will be imputable to the other.

2. STREET RAILROADS—INJURY TO PERSON ON TRACK.
Negligence and contributory negligence are questions for the jury, where plaintiff gave evidence that when deceased drove on defendant's street-car track the car by which he was killed was 125 feet distant, and that no bell was rung as it approached the wagon, while defendant gave evidence that decedent drove on the track about 10 feet in front of the car.

Appeal from trial term, Richmond county.

Action by Maria Schron, as administratrix of George Schron, deceased, against the Staten Island Electric Railroad Company, to recover damages for the death of plaintiff's intestate. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Wm. N. Dykman, for appellant.

T. F. Hamilton, for respondent.

HATCH, J. The son of the deceased and the deceased were both upon the wagon when the accident happened, and had been for some time prior thereto. Both were engaged in moving goods, for which purpose the horse and vehicle were used, and they were so occupied upon that day. They were therefore engaged in a joint occupation and venture, and each became liable for the negligence of the other. McCormack v. Railroad Co. (not yet officially reported) 44 N. Y. Supp. 684. If either were negligent in a manner contributing to the injury, it would furnish a sufficient answer to plaintiff's right to recover. From the evidence the jury were authorized to find that the deceased and his son occupied the same seat upon the wagon, the latter driving the horse. They were driving north, along Bay street, in Tompkinsville. In this street the defendant has double tracks. The wagon was in the easterly track, driving between the rails. In front of him was a horse and buggy, and in front of that was a covered double truck, which was proceeding at a very slow rate. These vehicles had occupied their respective positions for a distance of about 800 feet. As stated upon the argument, the space to the right of the easterly track, between it and the curb, was not wide enough to permit of the wagon passing by the other vehicles upon that side. The double truck in front had its back curtain down, and the vehicle and top prevented a view of the track and approaching cars on the westerly side. The driver of the buggy, after proceeding the 800 feet, turned out to the west, and drove ahead of the double truck. The son of deceased, being desirous of proceeding at a faster rate, also turned from the track to the west, which brought him upon the westerly track of the railroad. When he came upon the track, and had reached a point where the head of his horse was about opposite the seat of the double truck, he discovered a car approaching him at quite a rapid rate, and distant about 125 feet. The space to the west of the westerly track was sufficient for the wagon to drive by and clear the car. The other method to escape the car was to pull up and allow the truck to pass, and turn again into the easterly track. The latter is what the driver attempted to do, and succeeded in getting the horse and front part of the wagon off of the westerly track, when the car struck the rear part of the wagon, throwing the deceased from the wagon, and inflicting injuries from which he subsequently died. The son of the deceased testified that, before he turned to go upon the westerly track, he listened for the ringing of a bell; that he did not stop for that purpose, but that he did give attention to it, and

heard no bell. There was other evidence tending to establish that no bell was rung upon the car as it was approaching, and not until it was upon the point of striking the wagon. Upon these facts, we are of opinion that the question of contributory negligence of the deceased and his son became a question of fact for the jury. The case made by the defendant upon this point was to the effect that the horse and wagon were turned onto the track when the car was only 10 feet away. If this were the fact, then the driver was clearly guilty of contributory negligence. But upon this point the evidence was conflicting, and we are unable to say, as a legal conclusion, that the evidence of the defendant was controlling upon this point, or that the evidence of the plaintiff was improbable, or so inconsistent as to have warranted the court in deciding the question. It became a matter for the jury to determine, and the court submitted the question to them in a charge entirely unexceptionable, and their finding is conclusive upon us. If the car was 125 feet away when the wagon was turned into the westerly track,—and the jury were so authorized to find,—then, upon the testimony of the defendant as well as the plaintiff, it was clearly within the power of the motorman to stop his car and permit the horse and wagon to clear the street. It became the duty of the operator of the car so to do, and his failure in this regard was sufficient upon which to predicate negligence. Fishbach v. Railway Co., 11 App. Div. 152, 42 N. Y. Supp. 883. This conclusion does not bring us in conflict with Meyer v. Railroad Co., 9 App. Div. 79, 41 N. Y. Supp. 92. In that case the plaintiff drove in a diagonal direction towards a car approaching him, which was in his plain view for 150 feet. There was no cross street at the point, and no obstruction which prevented his turning to either side of the street. We held that the plaintiff was guilty of contributory negligence, and exonerated the defendant from negligence, upon the ground that it was the duty of the former to have turned off the track, and that the latter was not bound to anticipate that he would not do so. The distinction between the cases is clear.

No error was committed in the court's refusal to charge the jury, in the language of the counsel, that the jury could not find that the bell upon the car was not rung. The request proceeded upon the assumption that plaintiff's evidence upon this point was negative, merely; that the witnesses did not hear the bell, and the defendant's evidence was positive and affirmative that the bell was rung. The evidence in the case did not warrant the charge requested. The testimony given by the son was to the effect that he gave the matter attention, and that he heard no bell; that he listened for it; that it did not ring until just before the wagon was struck. Two other witnesses swear that they heard no bell, and each was in a position to hear, if rung. This we think was sufficient upon which the court was justified in refusing the charge requested. Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425.

We find no ground warranting a disturbance of this judgment. It should therefore be affirmed, with costs. All concur.