## MERINO v. MUNOZ.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

DEPOSITIONS—ORDER FOR COMMISSION—MODIFICATION.

Where, on application by a nonresident plaintiff for commission to examine nonresident witnesses, the opposing affidavit avers that plaintiff has purposely omitted his name as a witness to embarrass defendant in obtaining certain evidence in his possession, the order granting the commission will be modified by requiring plaintiff's name inserted, unless he stipulates to be present at the trial for examination.

Appeal from special term, New York county.

Action by Pedro A. Merino, as surviving partner of Pedro N. Merino & Sons, against Leontine C. Munoz, as executor, etc., of Jose M. Munoz, deceased. From an order granting plaintiff's motion to take testimony on commission in England, defendant appeals. Modified.

Plaintiff, who resided in London, England, applied for commission to take the testimony of certain witnesses in London. In defendant's opposing affidavit, which it was claimed was not contradicted, it was contended that plaintiff was in possession of documentary evidence essential to the defense, and purposely kept his name out of the commission, to put obstacles in the way of defendant's examining him or obtaining the use of such evidence. The order granting the commission omitted the substitution of plaintiff's name, and defendant appealed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Henry Major for appellant.
James L. Bishop, for respondent.

PER CURIAM. We think that this order granting plaintiff's motion for a commission to England to take testimony should be modified by requiring the plaintiff to stipulate that he will be present upon the trial for examination, or, if he is to remain in England, that his name be inserted in the commission as one of the parties to be examined there, so that the defendant may obtain the benefit of his examination, and of the production of such documents as he may have which are material and relevant to the issues.

Order modified accordingly, without costs.

---

(63 App. Div. 78.)

## MORRIS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. STREET RAILROADS—COLLISIONS—NEGLIGENCE—QUESTIONS FOR JURY.

The driver of a brougham, accompanied by plaintiff's intestate, who was seated with him, seeing street cars approaching on either side of the crossing, checked his horse, and, after they passed, started across the track, when a collision occurred with a car following one of the others. The car following gave no notice of its approach, and its speed was not checked until the collision was imminent. The driver did not notice the following car, and it did not appear whether or not deceased

71 N.Y.S.—21

looked for an approaching car before the brougham was driven on the track. The street was lighted, and there was no obstruction to the view. *Held*, that the questions of the company's negligence and the deceased's contributory negligence were for the jury.

2. SAME—IMPUTED NEGLIGENCE—INSTRUCTIONS.
    Where deceased, at the time of the collision with a street car, was seated with the driver of his father's carriage, and it did not appear that he had any control over such driver, so as to create the relation of master and servant, it was not error to instruct that he was not responsible for any negligence of the driver.

3. SAME—DAMAGES—EXCESSIVENESS.
    In a suit for negligently causing the death of a 16 year old son, who resided with his father, and, being on the eve of graduation, was in position to greatly aid him in his business, a verdict for $7,500 will not be disturbed as excessive.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Charles B. Morris, as administrator, etc., of Leslie B. Morris, deceased, against the Metropolitan Street-Railway Company. From a judgment in favor of plaintiff and an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
Edmund L. Mooney, for respondent.

INGRAHAM, J. The serious question presented in this case is as to whether there was evidence to justify a finding of the jury that the defendant was negligent. The facts are not disputed, the defendant offering no evidence. The defendant operates a line of electric cars upon Eighth avenue, in the city of New York, and on the night of December 9, 1898, between half-past 11 and 12 o'clock, the plaintiff's intestate received injuries which resulted in his death, caused by the collision of a brougham in which he was riding and one of the cars of the defendant's railroad. The sister of the plaintiff's intestate and her companions were riding inside the brougham, and he was riding on the driver's seat with the driver. The brougham proceeded westerly, through 126th street, intending to cross Eighth avenue at that street. Upon approaching Eighth avenue, two cars, one going north and the other going south, passed each other at the crossing of the street. The driver of the brougham, seeing these cars approaching, checked the speed of his horses to allow the cars to pass. After they passed, the brougham proceeded to cross the track, the driver testifying that he at the time was looking ahead, but in looking ahead could see the track both to the north and south as far as the middle of the block. He saw no other car approaching, and drove on the track. As his horse was on the track, he noticed a car approaching rapidly from the south. He at once pulled around his horse to the north, the car striking the front wheel of the brougham, and carrying it along until it reached a column of the elevated railroad just north of 126th street. In consequence of this collision, the plaintiff's intestate's arm was forced through the glass front of the brougham, and an artery in his arm was severed, which resulted in

his death.  Neither the plaintiff's intestate nor the driver was thrown from the brougham nor was the horse injured.  There is an electric light on the corner of 126th street and Eighth avenue, and the street seems to have been sufficiently lighted to enable the approaching carriage to be seen.  The car was also brilliantly lighted, and there seems to have been no obstruction which would prevent any one from seeing the car.  There was evidence to show that no gong was sounded or notice of the approaching of the car given.  There was no evidence to show whether the deceased looked for an approaching car before the brougham was driven upon the track.  The driver testified that the deceased did not speak to him as they approached the track, and that if he had requested him to stop for any reason he would have at once stopped.  I have arrived at the conclusion that there was evidence to justify a finding that the defendant's motorman was negligent.  We are entitled to assume that if the motorman had been attending to his duties he could have seen the brougham, that the driver intended to cross the track, and that he had checked the speed of his horse for the purpose of allowing the car immediately preceding that which collided with the brougham to pass.  It must have been evident to the motorman that a collision was imminent unless either the car or the brougham would stop.  There is nothing to show that at this time of night the cars were run so frequently that a person about to cross the track would consider it probable that one car would immediately follow another, and the motorman, seeing a carriage approaching the track, evidently intending to cross after a car preceding his car had passed, was certainly bound either to check the speed of his car or to give some notice, by a bell or otherwise, of the approaching car.  The car was closely following another car, proceeding in the same direction, and a car had also passed it going south.  These cars, with the noise accompanying their operation, would naturally distract the attention of the driver waiting to cross the track.  The passage at the crossing of these two cars, one preceding the car that collided with the carriage, and another car proceeding to the south, which must have passed the colliding car, as the carriage was approaching the track, imposed the duty upon the motorman of the colliding car to take some precaution to prevent a collision, either by giving notice of his approach, or by so checking the speed of the car that he could hold it in control.  According to the uncontradicted evidence, no such precaution was taken.  No notice of the approaching car was given, and the speed of the car apparently was not checked until the collision was imminent.  I think upon these facts it was a question for the jury as to whether there was negligence on the part of the defendant.

The question of contributory negligence was also for the jury.  It is undoubtedly true that the plaintiff, riding upon his carriage alongside of the driver, was bound "to learn of the danger and avoid it if practicable" (Brickell v. Railroad Co., 120 N. Y. 290, 24 N. E. 449); and in approaching this track he was bound to use his faculties to ascertain whether or not cars were approaching, and to do what he ought to avoid the collision.  There is no evidence as to whether the deceased looked or not.  The driver testified that he did not notice

what the deceased did, as he was attending to his duty of safely driving the horse; but the situation adverted to in discussing the question of the defendant's negligence—the passing of these two cars, to allow which the driver had checked the speed of his horse, the fact that the south-bound car must have passed the north-bound car within the block south of the crossing of 126th street, the fact that a car going to the north had just passed—were all facts which the jury could consider in determining whether or not it was negligence for the driver, or plaintiff's intestate seated with the driver, to attempt to cross the track behind the north-bound car. The lights of the south-bound car as it passed the car that collided with the brougham would naturally cause some confusion to a person about to cross the track as to whether there was a car approaching, and, under the circumstances, we cannot say that it was as a matter of law negligence for a person about to cross this track in failing to see the approaching car, especially where no signal of its approach was given. Upon this question of the contributory negligence of a passenger crossing a city street upon which these electric cars are operated we have not adopted the strict rule that is applied to a person crossing a steam railway in the country. The fact that these cars are constantly passing upon these city streets, and the greater control that those in charge of the cars have over them, do not require from a person about to cross the street the same care that is required in crossing a steam railroad running through a country district at a high rate of speed. Evidence to justify a finding that those in charge of street cars are negligent would generally require the submission of the question of contributory negligence to the jury, and we think that in this case the question of contributory negligence was one for the jury.

The court submitted this question of the plaintiff's contributory negligence by a charge which was certainly as favorable to the defendant as it was entitled to, and, under all the circumstances, we think that question was properly submitted to the jury. The court charged the jury that the deceased was not responsible for any negligence of the driver of this carriage, but in that we think there was no error. The driver was not the servant of the deceased. The carriage belonged to the deceased's father, and was used on this night to convey the deceased, his sister, and her companions home; and, while the driver testified that if the deceased had requested him to stop he would have done so, there was no evidence to show that the driver was under the control and direction of the deceased, so as to create the relation of master and servant. Where the relation of master and servant, as between a person using a vehicle of this kind and the driver, does not exist, and where it is not shown that the driver was under the express control of the person using the vehicle so that the driver was bound to obey orders given him, then it cannot be said that the negligence of the driver is, as a matter of law, to be imputed to the passenger. It is true that in such a case, as in all cases to recover for negligence, the plaintiff is bound to show that he was free from contributory negligence, and, where a passenger is seated alongside of the driver of a vehicle of this kind, it is undoubtedly his duty to exercise his faculties to discover approaching danger, and, by com-

municating the fact to the driver or otherwise, endeavor to avoid it. That is the extent, I think, to which the case of Brickell v. Railroad Co., supra, goes. The rule as stated in that case is: "It is no less the duty of the passenger, where he has the opportunity to do, than of the driver, to learn of danger, and avoid it if practicable;" but that rule relates to the duty of the passenger, and not to the duty of the driver; and if the passenger neglects to use such facilities as are available to ascertain the approach of danger, and inform the driver, or take other practicable means to avoid, the passenger is guilty of negligence which would prevent him from recovering. In all these cases it is the lack of care on the part of the passenger, and not the lack of care on the part of the driver, which would prevent a recovery. In this case, as we look at it, the same obligation was upon the deceased as was upon the driver to use his faculties to ascertain and avoid the danger. It was, of course, the driver who could stop the horse before attempting to cross in front of the approaching car; but, to entitle the plaintiff to recover, the deceased was bound to use ordinary diligence to ascertain the approach of danger, and inform the driver to enable him to avoid the collision. As we have seen, it was not negligence, as a matter of law, for the deceased to fail to notice this approaching car. The duty upon both the driver and the deceased was, under these circumstances, substantially the same, except that if the deceased had seen the approaching car, and had requested the driver to stop, and the driver, notwithstanding, had driven on, then the driver would have been guilty of contributory negligence; but it is quite clear that the deceased would not have been chargeable with such negligence. It was not, therefore, error for the court to refuse to charge that any negligence of the driver could be imputed to the deceased.

The only other question presented by the appellant is that the verdict of $7,500 was excessive. The plaintiff was a bright boy, 16 years of age, and was residing with his father. He was at that time attending school, from which he expected to graduate during the year. He was in the habit of assisting his father in his business on Saturdays, and for four or five weeks in the summer. He was strong and healthy, had displayed the qualities of a bright active boy in his father's business, and, his education being about finished, he was in a position to aid his father in his business. We said upon the former appeal in this case:

"We think that the evidence in this case fairly shows that this life would have been of substantial pecuniary value to his father. Physically, he was splendidly equipped; mentally, he was strong and vigorous. The immediate time had arrived when the cost and expense which his father had bestowed upon him and borne gave great promise of return. It was this fact which the jury were to consider, and to which much weight has been attached by the courts." 51 App. Div. 515, 64 N. Y. Supp. 878.

Under these circumstances, we do not think it can be said that an award of $7,500, as the pecuniary loss sustained by the father by the death of his son, was excessive, and the judgment and order appealed from should be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.