KLINCZYK v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. RAILROADS (§ 348*) — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

In an action for death of plaintiff's intestate by being struck by a train at a crossing, evidence held to show that deceased was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. § 348.*]

2. NEGLIGENCE (§ 93*)—IMPUTED NEGLIGENCE—DRIVER OF WAGON AND PASSENGER.

Where plaintiff's intestate was superior in authority to his coemployé, and was seated on the side of the wagon which gave him a convenient view of the approaching train, and where the horse stopped near the crossing, and started up at an easy walk, and could have been readily stopped in time to have averted the accident, plaintiff's intestate was none the less guilty of contributory negligence because his coemployé was driving the horse.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150; Dec. Dig. § 93.*]

Appeal from Trial Term, Erie County.

Action by Joseph Klinczyk, as administrator, against the Lehigh Valley Railroad Company. From a judgment for defendant dismissing the complaint, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Hamilton Ward, of Buffalo (John J. Brown, of Buffalo, of counsel), for appellant.

James McCormick Mitchell, of Buffalo (Kenefick, Cook, Mitchell & Bass, of Buffalo, of counsel), for respondent.

ROBSON, J. [1] Between 5:30 and 6 o'clock in the afternoon of March 7, 1910, plaintiff's intestate, aged between 18 and 19 years, seated on the left side and at the front of a covered baker's wagon drawn by a tractable single horse which was driven by a companion seated at his right, while proceeding southerly at a walk along a highway near the city limits of Buffalo, was killed at the grade crossing of defendant's northerly or west-bound track and the highway in a collision with defendant's west-bound passenger train then running at a speed of 50 miles an hour. The wagon seems to have been one of the ordinary, covered, delivery class, the top extending over the seat in the forward end, open in front, and with rigid sides in which were windows at a convenient height for observation either to the right or left. The driver, Wadyslaus Klimaszcwski, though injured, still survives the accident. They were both employés of John Kukulka, the owner of the horse and wagon; deceased being Kukulka's foreman, and the driver, his deliveryman. Both seem to have been entirely familiar with the place and its surroundings. The day was dark and cold, with light flurries of snow, and a wind blowing from the west with a velocity of 25 to 27 miles an hour.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Four witnesses who were near the scene of the accident and observed the progress of the wagon towards the crossing, three of whom saw the actual collision, were sworn.  Their position was in front of or near a trolley shelter of the Lancaster and Buffalo Line located about 700 feet from the scene of the accident; and as intending passengers on this line they were awaiting the arrival of a car from the south, the trolley line construction being at this point along the highway.  These witnesses saw the two men in the wagon pass towards the south.  South of the station of the witnesses the highway is crossed at grade by the tracks of three railway lines.  The northerly tracks, three in number, are those of the Delaware, Lackawanna & Western, next the Erie's two tracks, and lastly defendant's two tracks.  All these tracks are substantially parallel, running substantially east and west, crossing the highway at an angle to the northeast slightly less than a right angle.  Between the Lackawanna and Erie tracks is located the huge covered Lackawanna coal trestle, which extends from the highway nearly a mile to the east, the highway passing under the west end of the open trestle.  No view to the east of the tracks south of the trestle can be had from the highway until a point in line with the south side of the trestle is reached.  From that point, however, the view is open, the country being level and the railroad tracks straight in both directions for many thousand feet.  Measured along the center line of the highway the distance from its intersection with the south line of the trestle extended to the first or north rail of the Lehigh westbound track, being the track on which the collision occurred, was 305 feet.  The distance between the south rail of the Erie tracks and this north rail of the Lehigh track is 65 feet.  In the space between these rails and east of the highway there is a double row of telegraph poles, the poles being of the usual size, and a building, called the tower, which are the only obstructions to the view to the east from the highway south of the line of the trestle.  This tower was two stories in height, with a stairway on the north side 3 feet in width.  The west face of the tower measured 12½ feet and the south face 20½ feet.  The distance of the west face of the tower from the center line of the highway was 51 feet.  From the south face of the tower to the north rail of the Lehigh track measured at right angles is 21½ feet, and from the intersection of the line of this face of the tower, extended westerly, with the center line of the highway, measured southerly along this center line to the north rail, is 23 feet 8 inches.  Therefore after passing the Lackawanna trestle, and before reaching the tower, deceased and his companion while passing south along the highway had for nearly 250 feet of their journey a practically unobstructed view to the east; and, after passing the tower and while traversing the 23 feet and 8 inches to the first rail of the track, nothing whatever obstructed their view.  It is claimed by plaintiff that it was then getting dark, and there was snow in the air and the wind blowing fiercely; but no witness had any difficulty in seeing the wagon and following it with the eye while it covered the distance after passing the shelter to the point of collision, or in clearly seeing the train where it stopped after the collision at least a quarter of a mile from

the crossing. It also appears that the sun had not set at the time. There was nothing by way of other passing trains, noises, smoke, or other temporary obstructions except those I have already adverted to. The mere description of the physical situation and surroundings must lead to the inevitable conclusion that plaintiff was not shown free from contributory negligence by any legitimate inference to be drawn therefrom. Appellant's counsel, though controverting this necessary conclusion, relies largely upon the accepted relaxation of the rigid requirement of proof of absence of contributory negligence in death cases, which, in view of some further facts to which I will now advert, it is claimed would permit a jury to infer that the deceased was not negligent. Through no apparent fault or omission of either party to the action the driver of the wagon was not available as a witness. From the testimony of the four witnesses, to whom I have referred, it might be found that the wagon was stopped just before reaching the Delaware, Lackawanna & Western tracks, again before reaching the Erie tracks, and also just before the attempt was made to cross the track upon which the accident happened. Three witnesses testify that the wagon stopped before going upon the Lehigh track. The distance from the track where this stop was made is estimated variously at from 4 to 20 feet. If a stop was made at either distance, it is apparent that the train which collided with the wagon was in plain sight of plaintiff, sitting, as he was, on the side towards which the train was coming, for they had then gone beyond the tower.

[2] But it is claimed that, as deceased was not in physical control of the movement of the horse and wagon, an inference may be drawn that, when the wagon stopped in a place of safety, he could not be held responsible as matter of law because it was immediately driven forward, and that the stop itself indicates an appreciation of the surroundings and the exercise of some care on the part of the occupants of the vehicle. The case of Hoag v. N. Y. C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648, is the chief reliance of counsel for appellant on this point. In that case plaintiff's intestate was riding with her husband, who was driving. One of defendant's trains collided with the vehicle, in which they were riding, and both were killed. In their immediate approach to the track their view was unobstructed. The husband was clearly guilty of contributory negligence, which the court held was not under the circumstances imputable to the wife. The vehicle was not stopped, but the horse was seen by witnesses to have been apparently going at a much greater speed as it approached the crossing in an apparent attempt to cross ahead of the train. The court held that either one of two inferences could be drawn from the facts. First. That the wife did not see the train, in which case she was not guilty of contributory negligence. Second. That she did see the train, but did not, and was not called upon to, anticipate that the husband would make the attempt to cross until it was too late for her to avoid the consequences of his imprudence. The court says she was not then obliged to jump from the carriage, or seize the reins, and that it cannot be known that she did not implore him to stop. It was this second possible inference from the facts that in that case made

'a question of fact for the jury.' ·But the case we now have presents none of these features. True, plaintiff's intestate was not driving; but his apparent authority was superior to that of the driver, for he was the foreman of their common employer. He was seated on the side of the wagon from which the best and most convenient view could be had of the approaching train. The horse stopped and started up, not suddenly, but at the same easy walk at which it had previously gone. A word of warning or a touch upon the reins would have stopped the horse while still in a place of safety, and the accident would have been averted. No inference of a sudden independent decision of the driver "to try to beat the train across" is permissible as it was in the Hoag Case. The case of Noakes v. N. Y. C. & H. R. R. Co., 121 App. Div. 716, 106 N. Y. Supp. 522, affirmed 195 N. Y. 543, 88 N. E. 1126, in which a girl of 16 seated in an automobile was injured in a collision at a grade crossing and a recovery of damages sustained is not in point, for her contributory negligence depended upon considerations of the age of plaintiff, her position in the vehicle, and her relations to those in the management and control of its operation, which in that case it was held presented a question of fact for the jury to pass upon. '

The judgment should be affirmed, with costs. All concurred.