## MOSSON v. LIBERTY FAST FREIGHT CO., Inc.

### No. 118.

Circuit Court of Appeals, Second Circuit.
Jan. 5, 1942.

Nathan Walker, of New York City, for appellant.

Desmond T. Barry, of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, the administratrix of one, David Mosson, appeals from a judgment dismissing her action entered upon the verdict of a jury. The action was to recover damages for her intestate's death in a collision between a car in which he was being driven and a truck owned and operated by the defendant. The car turned to the left

at a street crossing and the truck, coming in an opposite direction along the street from which the car turned, struck the car on the right side; Mosson, being seated at the driver's right, was so badly injured that he died a few days later. The plaintiff raises three questions upon this appeal: the submission to the jury of the contributory negligence of the driver of the car; the admission of certain testimony; and a restriction imposed upon her right to examine the whole of a document, part of which was admitted in evidence. These we shall take up in that order.

Mosson was employed by a company known as the Amos-Mosson Lumber Co., dealing in lumber as its name implies. Adolph Mosson, his brother, was president of this company and owned 107 of the 117 shares; David Mosson's two sons, Louis and Morris, each owned five of the remaining ten. David Mosson himself, a man 72 years old, was neither an officer nor a director in it; so far as appears, he had no part in the conduct of the business, being merely a salesman and buyer at a salary of $35 a week. Adolph Mosson was 80 years old, and Louis and Morris Mosson were the active managers of the business. The car in which David Mosson was seated belonged to this company and its driver, one Gioninno, was a driver in its employ. David Mosson had asked Gioninno to take him to a customer of the company on the company's business; and the only testimony was that he had no authority to direct or control Gioninno's driving, or even to decide what course should be taken to his destination. On these facts the judge left it to the jury to say whether Mosson "had the right to control the car and Gioninno had to take orders from him"; again, that there was "no positive evidence here that this deceased controlled the automobile or could control it, but you have a right to draw reasonable inferences from the facts * * * The deceased had a right to say when he wanted to use the automobile and where he wanted to go, and you are to determine whether that carried with it any control over its operation or the selection of the way in which it was to go, or whether Gioninno, the chauffeur, was telling the truth when he said that nobody controlled him, that he took orders from no one as to the operation of the automobile but he operated it alone as his own wisdom dictated." To this the plaintiff excepted and twice asked the judge to charge that Gioninno's contributory negligence, if any, was not a defense.

The fact that Gioninno was a fellow servant of Mosson was not of itself enough to impute Gioninno's negligence to him. McCormack v. Nassau Electric R. Co., 18 App.Div. 333, 46 N.Y.S. 230; Hobson v. New York Condensed Milk Co., 25 App. Div. 111, 49 N.Y.S. 209; Scheib v. New York City Railway Co., 115 App.Div. 578, 100 N.Y.S. 986. That may also have been the reason for the result in Seaman v. Koehler, 122 N.Y. 646, 25 N.E. 353, but the facts are too fragmentarily reported for us to be sure. Ottmann v. Rockville Centre, 275 N.Y. 270, 9 N.E.2d 862, and Bailey v. Jourdan, 18 App.Div. 387, 46 N. Y.S. 399, are in accord except insofar as the fact that the two employees were public servants may make a difference. These decisions must be distinguished from those in which the injured person and the driver were engaged in a "joint enterprise" of their own. Donnelly v. Brooklyn City R. Co., 109 N.Y. 16, 15 N.E. 733; Schron v. Staten Island Electric Co., 16 App.Div. 111, 45 N.Y.S. 124. Therefore, if Gioninno's negligence is to be imputed to Mosson, it must be because Mosson had some "control" over Gioninno's driving. Zimmermann v. Union Railway Co., 28 App.Div. 445, 51 N.Y.S. 1; Morris v. Metropolitan Street Ry. Co., 63 App.Div. 78, 71 N.Y.S. 321; Klinczyk v. Lehigh Valley R. Co., 152 App.Div. 270, 136 N.Y.S. 696. The cases leave open the meaning of "control": i. e. how much the passenger must actually interfere, or be authorized to interfere, in the driving beyond merely selecting the destination; but we are spared the need of deciding the point now, because, if there was any evidence whatever of Mosson's "control" over Gioninno, it was as probative of entire, as of partial, "control."

Although the defendant concedes that it had the burden of proof upon the issue, there was, as we have said, no affirmative testimony that Mosson did have any authority to direct Gioninno's driving further than to select the destination. Indeed, there was testimony that he had not. Louis and Morris Mosson both so swore, and Gioninno confirmed them, adding that he would have even refused to follow any order of Mosson as to the route he should take to the customer's. The defendant answers that, although it was unable to extract any admissions from the plaintiff's

witnesses, the jury was not obliged to accept their word, especially since Louis and Morris Mosson were presumably interested in excusing their father, and since Gioninno was dependent upon them for his job. Moreover, the defendant continues, not only might the jury have discredited the testimony of all three, but the evidence, taken as a whole, gave positive support for holding that Mosson was in "control" of Gioninno's driving. The company was plainly a family business which Mosson's own sons actively managed, which his brother owned and in which he had confessedly always had an active part. Moreover, the jury were entitled to infer from the witnesses' appearance, and especially from the emphasis of Gioninno's denials, that the truth was the contrary of what he said.

■■ Leaving out for the moment the question of how far the jury might have relied for an affirmative finding upon the witnesses' appearance, and treating the question as though it depended only on what the record preserves, at best the issue remained in balance. Mosson undoubtedly did have a securer job than the ordinary salesman or buyer; but we have no reason to suppose that he had any greater authority in the conduct of the business; perhaps he did, perhaps he did not. Even if he had, that would not be enough unless that authority extended to Gioninno's driving, and it is not very probable that Louis and Morris Mosson would have given their father, a man of 72, power to direct the driving of a professional driver. Even though the jury altogether discredited all the testimony, there was no basis for the verdict in any disclosed relation of Mosson to the company. The defendant's second argument is that the jury, who did not believe the two Mossons and Gioninno, were justified in concluding that the opposite of what they said was the truth: i. e. that Mosson did have "control" over the driving. The jury were not indeed obliged to believe what these witnesses said, and it is possible that the manner of their testifying gave affirmative evidence that what they denied was true. But all that was lost in the court room, and we have nothing but the printed record; we cannot supply the absence of palpable evidence by supposition; it is one thing to give a jury latitude to discredit testimony, and another to assume that evidence existed which does not appear. Nor does it follow because they may disbelieve a witness's denial that they have warrant for finding the existence of the fact denied;

those are not the only possibilities. There was therefore no evidence on which to support the imputation of Gioninno's negligence to Mosson, and the issue should not have been submitted to the jury.

■■ Since the case must be tried again, we will pass upon the two questions of evidence which came up at the first trial. The first of these was the admission of the declaration of a witness for the defendant made before trial. The facts were as follows. The defendant called one, Squires, who had seen the collision and whose testimony tended to exonerate the defendant's driver and to put the fault upon Gioninno. Upon cross examination the plaintiff introduced in evidence a written statement, signed and sworn to by Squires, which varied in some respects from his testimony; e. g. as to the speed of the truck and as to where he was standing when he saw the collision. Upon rebuttal the judge admitted the testimony of a police officer, called by the defendant, who said that Squires had told him while still at the scene that the car had made a sudden turn to the left from behind a trailer which obscured it from the oncoming truck. To this the plaintiff objected and now charges its admission, as error. So far as the declaration impeached Squires's statement upon cross examination that he saw no trailer in front of the car, it does not come within Rule 43(b), 28 U.S. C.A. following section 723c, because Squires was not a party; nor does it come within Rule 43(a) because the law of New York, Civil Practice Act § 343a, allows one to impeach a witness called by him only by means of a signed or sworn statement. So far as Squires's declaration confirmed what he said upon direct as against what he had said in the written statement put in by the plaintiff, it was admissible only on the theory of "rehabilitation"; that is to say, only in case Squires had been impeached because of a motive to falsify and the declaration had been made before the motive had arisen. Di Carlo v. United States, 2 Cir., 6 F.2d 364; Gelbin v. New York, New Haven & Hartford R. Co., 2 Cir., 62 F.2d 500; McCarthy v. Palmer, 2 Cir., 113 F.2d 721; United States v. Potash, 2 Cir., 118 F.2d 54, 57. The situation was not within that doctrine, and the declaration was incompetent in any aspect.

■ The second alleged error was the judge's refusal to allow the plaintiff to examine the whole of the policeman's notebook, one part of which he had used to re-

fresh his recollection about his talk with Squires. This point can hardly arise again unless the policeman's talk becomes competent upon some other ground than now appears; but if it should, it is enough to say that the plaintiff's right to examine more than the entry put in evidence will be conditional upon the judge's preliminary examination of the book to see whether it contains anything whose disclosure might be prejudicial to the enforcement of law. If he finds nothing, the plaintiff may inspect the book generally; so far as he finds anything, the plaintiff will not be free to inspect that part.

Judgment reversed; new trial ordered.